ROBERT M. HEALEY, Indiv. and as President of the Illinois Federation of Teachers, *et al.*, Plaintiffs-Appellants, v. TEACHERS RETIREMENT SYSTEM OF THE STATE OF ILLINOIS *et al.*, Defendants-Appellees.

Fourth District   No. 4—89—0781

Opinion filed August 2, 1990.

Lawrence A. Poltrock, of Witwer, Burlage, Poltrock & Giampietro, of Chicago (James M. Pietz, of counsel), for appellants.

Joan T. Hancock, of Teachers Retirement System, of Springfield, and Gregory J. Malovance and Stephen S. Morrill, both of Winston & Strawn, of Chicago, for appellees.

JUSTICE LUND delivered the opinion of the court:

Defendants Teachers Retirement System (TRS) and Samuel Anderson refused to provide certain information regarding their en-

rollees which plaintiffs Robert M. Healey and the Illinois Federation of Teachers (IFT) had requested pursuant to the Freedom of Information Act (FOIA) (Ill. Rev. Stat. 1989, ch. 116, par. 201 *et seq.*). Plaintiffs filed suit requesting declaratory and injunctive relief. Appellants appeal from and we affirm the order of the circuit court of Sangamon County denying plaintiffs' request.

On July 18, 1986, Robert M. Healey, as president of IFT, sent a written request to TRS asking that TRS provide the following information regarding all of its enrollees: "Names, addresses (including zip codes), school district of employment, school name and address, home telephone numbers, number of years (and credit years) in TRS and status of enrollee (active retired, other)." TRS denied IFT's request. After IFT's request was again denied in an appeal to the executive director of TRS, IFT filed a complaint seeking declaratory and injunctive relief in the circuit court of Cook County.

Shortly after plaintiffs filed their complaint, defendants sought a transfer for *forum non conveniens* to the circuit court of Sangamon County. Defendants' motion was granted, and the cause proceeded to a bench trial in the circuit court of Sangamon County.

Edward Geppert, Jr., the assistant to the president of IFT, testified on behalf of the plaintiffs. He discussed in detail the nature of the plaintiffs' request and the purposes for which the information sought would be used. Geppert explained that 96% of all teachers in the kindergarten- through twelfth-grade system are currently under collective-bargaining agreements. He stated that IFT often engages in elections against the Illinois Education Association (IEA), which is the only other large teachers' union in the State.

When questioned regarding IFT's purpose for requesting such information, Geppert stated that TRS "is the—to our knowledge, the sole place where the body of information exists." He stated that IFT has not been able to communicate directly with those teachers outside its membership, but rather has "had to suffer through a series of gatekeepers." Geppert explained that those teachers outside IFT membership are primarily members of the IEA, and contended that there are significant differences between the two organizations that need to be communicated.

Geppert described information IFT has sent to State University Retirement System (SURS) enrollees. He stated that this information is an example of the type of information IFT would send to TRS enrollees if it could obtain their names and addresses. Plaintiffs' exhibits Nos. 4 through 7, which are examples of items mailed to SURS enrollees, include a brochure entitled "Discover the IFT Advantage," which

outlines the benefits of IFT membership. The brochure stresses that IFT bargains more effectively than IEA and strikes less frequently, and emphasizes that IFT's affiliate costs are less than IEA's. Another item, entitled "Opinion Survey," asks teachers to rate their job satisfaction, to express their opinion of various labor unions including IFT and the National Education Association, and to rate the performance of their current labor union. A third piece, entitled "Stay in Touch with the World of Public Employment," describes the benefits of an "Emeritus Membership" designed for retired public employees. Stated benefits include, "Insurance plans, buying services, group travel services *** even the AFT VISA card ***." Geppert stated that an "Emeritus Bulletin," which would accompany the "Stay in Touch" brochure, would "provide legislative information about the emeritus program *** which we think is timely and important to retired public employees." The "Emeritus Bulletin" introduced at trial reiterated the benefits of emeritus membership in the IFT. Geppert admitted that "Discover the IFT Advantage" and the IFT "Opinion Survey" have been described as "organizing tools" in reports to the IFT executive board.

The trial court entered an order in favor of defendants, denying plaintiffs' request for declaratory and injunctive relief. We affirm the trial court's finding that the information sought by plaintiffs is exempt from disclosure, pursuant to section 7(b)(i) of the FOIA. (Ill. Rev. Stat. 1989, ch. 116, par. 207(b)(i).) While the trial court did not rely upon section 7(b)(ii) of the FOIA as a basis for its ruling, this exemption also prohibits disclosure of the requested information. Ill. Rev. Stat. 1989, ch. 116, par. 207(b)(ii).

■ Section 3(a) of the FOIA sets forth the act's general rule of disclosure, requiring that "[e]ach public body shall make available to any person for inspection or copying all public records, except as otherwise provided in Section 7 of this Act." (Ill. Rev. Stat. 1989, ch. 116, par. 203(a).) Section 2 of the FOIA provides the definitions for all terms used therein. Included within the subsection (a) definition of "public body" are "administrative, or advisory bodies of the State" and "school districts." (Ill. Rev. Stat. 1989, ch. 116, par. 202(a).) The subsection (c) definition of "public records" includes "all records *** having been prepared, or having been or being used, received, possessed or under the control of any public body." (Ill. Rev. Stat. 1989, ch. 116, par. 202(c).) Therefore, TRS, as well as all school districts, are "public bodies" and the information plaintiffs seek is a "public record."

■◗ ■ Section 7 lists the various exemptions from disclosure and provides, in relevant part:

"(1) The following shall be exempt from inspection and copying:
***

(b) Information which, if disclosed, would *constitute a clearly unwarranted invasion of personal privacy,* unless such disclosure is consented to in writing by the individual subjects of such information. The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy. Information exempted under this subsection (b) shall include but is not limited to:

(i) files and personal information maintained with respect to clients, patients, residents, students or other individuals receiving social, medical, educational, vocational, financial, supervisory or custodial care or services directly or indirectly from federal agencies or public bodies;

(ii) personnel files and personal information maintained with respect to employees, appointees or elected officials of any public body or applicants for such positions; ***." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 116, pars. 207(1)(b)(i), (1)(b)(ii).) This court has consistently recognized that the exemptions contained within the subsections of section 7(b) are *per se* exemptions and do not require courts to determine whether disclosure of the information described in each exemption would constitute a "clearly unwarranted invasion of personal privacy." (*Staske v. City of Champaign* (1989), 183 Ill. App. 3d 1, 5, 539 N.E.2d 747, 750; *Copley Press, Inc. v. City of Springfield* (1986), 143 Ill. App. 3d 370, 372-73, 493 N.E.2d 127, 128.) The information plaintiffs seek constitutes "files and personal information maintained with respect to *** individuals receiving *** financial *** services" directly from a public body, and is therefore *per se* exempt from disclosure under the plain language of section 7(b)(i). As "personnel files and personal information maintained with respect to employees *** of [a] public body," the subject of plaintiffs' informational request is similarly exempt under section 7(b)(ii).

Nondisclosure of the requested information also comports with the public policy and legislative intent underlying the FOIA. Section 1 of the FOIA provides, in relevant part:

"Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent

them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest.

This Act is not intended to be used to violate individual privacy, nor for the purpose of furthering a commercial enterprise, or to disrupt the duly-undertaken work of any public body independent of the fulfillment of any of the fore-mentioned rights of the people to access to information." Ill. Rev. Stat. 1989, ch. 116, par. 201.

Although plaintiffs contend that the information they seek is directly relevant to the operation of government, we fail to see how the disclosure of names, addresses, telephone numbers, and the enrollment status of TRS members would reveal anything about the affairs of government or the official acts and policies of the public officials who administer TRS.

Plaintiffs further insist that, once given the information they seek, they will inform TRS enrollees of relevant legislation and collective-bargaining issues, thereby helping to fulfill FOIA's stated objective of enabling "the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." (Ill. Rev. Stat. 1989, ch. 116, par. 201.) However, plaintiffs' testimony at trial suggests that IFT's primary objective is to enlarge its membership rather than inform the public.

By plaintiffs' own admission, 96% of the teachers in the kindergarten- through twelfth-grade system are currently under collective-bargaining agreements. Plaintiffs' exhibits Nos. 4 through 7, which are examples of the type of information IFT would send TRS members, contain little discussion of relevant legislation and collective-bargaining issues. The information is largely self-promotional and is focused on attracting potential members to the IFT. In short, neither the information IFT requests, nor the information it plans to send TRS members if its request is granted, tends to reveal much at all about the operation of government. IFT is merely seeking to expand its enterprise. Nondisclosure of information sought for this purpose is consistent with the public policy expressed in section 1 of the FOIA.

We recognize that our *per se* interpretation of section 7(b) exemptions differs from that of the First and Third District Appellate Courts. These courts reject a *per se* application of exemptions in favor

of a case-by-case balancing of interests in which the court must determine if disclosure would "constitute a clearly unwarranted invasion of personal privacy." (*Margolis v. Director of the Department of Revenue* (1989), 180 Ill. App. 3d 1084, 1089, 536 N.E.2d 827, 829-30; *City of Monmouth v. Galesburg Printing & Publishing Co.* (1986), 144 Ill. App. 3d 224, 226, 494 N.E.2d 896, 898.) Now, as in the past, we decline to follow their reasoning.

Much like the First and Third District Appellate Courts, Federal courts balance the privacy interest in nondisclosure against the public interest in disclosure when applying certain exemptions contained within the Federal act. (See *National Association of Retired Federal Employees v. Horner* (D.C. Cir. 1989), 879 F.2d 873, 874.) However, the exemptions contained within the Federal Freedom of Information Act (5 U.S.C. §552(b) (1988)) are often not categorical in nature and compel Federal courts to determine whether the release of information would invade the personal privacy of those persons who are the subject of such information. For example, the Federal corollary to the Illinois FOIA's exemption 7(b)(i) states that the Federal act's disclosure requirements do not apply to "personnel and medical files *** the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." (5 U.S.C. §552(b)(6) (1988).) Contrastingly, the Illinois FOIA sets forth categorical examples of information which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy, thereby relieving courts of the task of case-by-case balancing. The State and Federal acts are sufficiently different in their construction that we are not compelled to follow the Federal court's balancing approach.

Our decision to apply section 7(b) exemptions in a categorical manner finds further support in *United States Department of Justice v. Reporters Committee for Freedom of the Press* (1989), 489 U.S. ____, ____, 103 L. Ed. 2d 774, 797-98, 109 S. Ct. 1468, 1483, where the United States Supreme Court recognized that the exemptions contained within the Federal act may be applied in a *per se* fashion:

> "Our cases provide support for the proposition that categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction."

Given the fact that the information plaintiffs seek says little or nothing about the operation of government, we find the Court's language compelling in this case. The trial court properly construed the section 7(b) exemptions in a *per se* manner.

While we decline to adopt a balancing approach, we are not con-

vinced that the result of this case would be any different even if we chose to do so. At least two Federal cases suggest that the information sought by plaintiffs would be exempt from disclosure under any approach.

In *Horner* (879 F.2d 873), the District of Columbia Circuit reversed the judgment of the district court ordering the Office of Personnel Management to disclose to the National Association of Retired Federal Employees (NARFE) the names and addresses of retired Federal employees. Much like the plaintiffs in this case, NARFE sought the list in order to recruit new members through mailings. After balancing the public interest in disclosure against the privacy interest in nondisclosure, the *Horner* court concluded that disclosure of the requested records would infringe upon a modest privacy interest and would serve no public interest. Hence, the court reasoned, disclosure of the records was prohibited by exemption 6 of the Federal act (5 U.S.C. §552(b)(6) (1988)) as a clearly unwarranted invasion of personal privacy. (*Horner*, 879 F.2d at 879.) The *Horner* court's reasoning suggests that if we chose to apply a balancing test, we would reach a similar conclusion:

> "The lesson for this case, *mutatis mutandis*, is that unless the public would learn something directly about the workings of the *Government* by knowing the names and addresses of its annuitants, their disclosure is not affected with the public interest. *** The simple fact is that those records say nothing of significance about 'what the[] Government is up to.' " *Horner*, 879 F.2d at 879.

Federal courts applying the balancing test advocated by plaintiffs have also recognized that nondisclosure is warranted when "any benefits flowing from disclosure of the information sought would inure primarily to the union, in a proprietary sense, rather than to the public at large." (*American Federation of Government Employees, AFL-CIO, Local 1923 v. United States Department of Health & Human Services* (1983), 712 F.2d 931, 932.) This is precisely such a case.

Although Federal precedent suggests that the outcome of this case would be no different if we undertook a balancing test, plaintiffs advocate three principal arguments in support of their contention that the trial court erred in applying exemption 7(b)(i) in a *per se* manner. Plaintiffs first contend that the trial court was legally bound to apply the first district's balancing approach.

The plaintiffs originally filed this action in Cook County, where the first district's balancing approach is binding on the circuit court. Defendants were then granted a motion to transfer for *forum non*

*conveniens,* and the cause proceeded to trial in Sangamon County, where the court followed our *per se* interpretation of the FOIA. When a defendant obtains a transfer for *forum non conveniens* in the Federal courts pursuant to section 1404(a) (28 U.S.C. §1404(a) (1988)), the law of the transferor forum applies. (*Van Dusen v. Barrack* (1964), 376 U.S. 612, 639, 11 L. Ed. 2d 945, 962-63, 84 S. Ct. 805, 821.) Plaintiffs reason that the same choice-of-law principles that are applied in Federal *forum non conveniens* cases should be applied at the State level. However, plaintiffs cite and we know of no authority for this proposition. Further, we do not view this as an appropriate case in which to apply the choice-of-law principles utilized in Federal *forum non conveniens* cases.

The primary rationale for applying the law of the transferor forum in Federal cases is to discourage "forum shopping" by the defendant in an attempt to obtain a State law advantage. There is little in this case to suggest that defendants sought transfer in order to obtain an advantage through the application of fourth district law. Defendants sought transfer to Sangamon County because TRS, the information plaintiffs seek, and all of the potential TRS witnesses are located there. Additionally, as we previously suggested, it seems unlikely that the result of this case would be any different if the first district's balancing approach had been applied by the trial court. Hence, it is not apparent that defendants actually obtained an advantage even if one was sought.

Plaintiffs further contend that the trial court's *per se* construction of section 7(b) violates the first amendment of the United States Constitution. (U.S. Const., amend. I.) Plaintiffs reason that the first amendment requires the State to show that any denial of the public's right of access to information about the operation of government is necessitated by a compelling governmental interest and is narrowly tailored to serve that interest. Plaintiffs assert that by construing the section 7(b) exemptions in a *per se* manner, the trial court relieved the State of its burden of showing a compelling governmental interest and thus rendered the FOIA unconstitutionally overbroad. Plaintiffs cite *Globe Newspaper Co. v. Superior Court* (1982), 457 U.S. 596, 73 L. Ed. 2d 248, 102 S. Ct. 2613, and *Richmond Newspapers, Inc. v. Virginia* (1980), 448 U.S. 555, 65 L. Ed. 2d 973, 100 S. Ct. 2814, as authority for their constitutional challenge.

This court's interpretation of the FOIA withstood a similar challenge in *Copley Press* (143 Ill. App. 3d 370, 493 N.E.2d 127). There, the plaintiff also relied upon *Globe* and *Richmond* as the basis for its first amendment argument. This court distinguished the two United

States Supreme Court cases from the facts of *Copley Press* as follows:

"*Globe* and *Richmond* concern the right of media representatives to be present at ongoing criminal trials. The *Globe* court explained that the right to such access to court proceedings was grounded in a tradition of accessibility and the need to permit public scrutiny of the judicial process. There is no such tradition of accessibility to applications for licenses and less need to permit public scrutiny of the background of people receiving licenses." (*Copley Press*, 143 Ill. App. 3d at 374, 493 N.E.2d at 129.)

The distinctions we set forth in *Copley Press* are equally applicable to this case. There is by no means a tradition of accessibility to the type of information plaintiffs seek. Further, there is little need to permit public scrutiny of such information because it reveals practically nothing about the operation of government. Our *per se* interpretation of the section 7(b) exemptions does not run afoul of the first amendment.

Finally, plaintiffs contend that the Illinois Supreme Court decision in *Hamer v. Lentz* (1989), 132 Ill. 2d 49, 547 N.E.2d 191, recognizes that section 7(b) does not create *per se* exemptions and mandates disclosure of the information they request. Although the facts of *Hamer* are similar to those of this case, we do not view the *Hamer* holding so expansively.

In *Hamer*, the plaintiff submitted a written request for certain records to Norman Lentz, the administrative secretary of the Illinois General Assembly Retirement System (GARS). Plaintiff sought information regarding the identity of all former members of the Illinois General Assembly currently receiving pension payments under GARS, the annual pension received by each former member, the salary received by each former member immediately prior to retirement, the date of retirement, the length of service in the General Assembly, and the cumulative pension received by each former member from the date of retirement. After GARS refused to release the records plaintiff requested, he brought an action for declaratory and injunctive relief pursuant to the Illinois FOIA. The trial court ordered defendants to disclose some, but not all of the requested information. The appellate court held that the FOIA required all the records requested by plaintiff to be disclosed. (*Hamer v. Lentz* (1988), 171 Ill. App. 3d 888, 525 N.E.2d 1045.) Defendants appealed to the Illinois Supreme Court, contending that to produce the length-of-service and cumulative pension information requested by plaintiff would require defendants to "create a new record," a duty the FOIA expressly declines to impose

upon public bodies. (*Hamer*, 132 Ill. 2d at 54, 547 N.E.2d at 194.) Defendants did not contend that the information the appellate court ordered them to disclose was exempt under section 7 of the FOIA.

Without citing any of the FOIA exemptions, the court held that the cumulative pension and length-of-service information "is maintained by defendants in the ordinary course of business and it is not exempt from disclosure." (*Hamer*, 132 Ill. 2d at 55, 547 N.E.2d at 194.) Whether or not these records were exempt was not at issue in defendants' appeal. Further, the court stated no rationale whatsoever for its comment in *dicta* that the information plaintiff sought was "not exempt from disclosure." For these reasons, we do not view the *Hamer dicta* as explicitly or implicitly indicating that it is improper to construe section 7(b) exemptions in a *per se* fashion. Nor do we view *Hamer* as mandating disclosure of the information requested in this case. Although this case and *Hamer* are factually similar, the *Hamer* decision addresses a completely different legal issue. Our decision is not controlled by *Hamer*.

For these reasons, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.