LIEBER v. BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY, No. 81220

NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of the opinion

to request a rehearing. Also, opinions are subject to modification, correction or withdrawal at

anytime prior to issuance of the mandate by the Clerk of the Court. Therefore, because the

following slip opinion is being made available prior to the Court's final action in this matter,

it cannot be considered the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of Decisions in the Official

Reports advance sheets following final action by the Court.

                                    

               Docket No. 81220--Agenda 12--January 1997.

       STAN LIEBER, Appellee, v. THE BOARD OF TRUSTEES OF SOUTHERN

                     ILLINOIS UNIVERSITY, Appellant.

                       Opinion filed May 1, 1997.

     JUSTICE HARRISON delivered the opinion of the court:

     The issue in this case is whether the Freedom of Information

Act (Act) (5 ILCS 140/1 et seq. (West 1994)) requires Southern

Illinois University (SIU) to provide the owner of an apartment

building approved by the University for freshman students with a

list containing the names and addresses of individuals who had

contacted the University about freshman housing. The circuit court

held that SIU did not have to give the building's owner access to

this information and granted summary judgment in favor of the

University. The appellate court reversed and remanded with

directions to enter summary judgment against SIU and in favor of

the building's owner. 279 Ill. App. 3d 553. We granted SIU's

petition for leave to appeal (155 Ill. 2d R. 315) and now affirm

the appellate court's judgment.

     Summary judgment is proper where

          "the pleadings, depositions, and admissions on file,

          together with the affidavits, if any, show that there is

          no genuine issue as to any material fact and that the

          moving party is entitled to a judgment as a matter of

          law." 735 ILCS 5/2--1005(c) (West 1994).

     In this case, the record discloses the following facts. SIU

requires unmarried freshmen under the age of 21 who do not live

with their parents to reside either in a University dormitory on

campus or in privately owned off-campus housing approved by the

University. Stan Lieber, the plaintiff in this case, owns a

University-approved off-campus housing facility known as the

Stevenson Arms.

     In the past the University supplied Lieber and other owners of

approved off-campus housing with information about incoming

freshmen so that the owners could contact them directly with

information about their respective housing units. They also

routinely supplied mailing labels containing names and addresses of

incoming students to the Southern Illinoisan, a Carbondale

newspaper, and to various religious organizations. In addition, the

University honored requests from various state representatives for

the names and addresses of SIU students who resided in their

legislative districts, and it provided numerous other educational

institutions with information about students who had transferred

from those institutions to SIU, including social security numbers,

academic major, and number of hours of study completed.

     In the spring of 1992, SIU sent a letter to the manager of the

Stevenson Arms noting that enrollment at the University was

declining and that occupancy rates in student housing had dropped,

resulting in more competition between the various housing

providers. The University cautioned the Stevenson Arms about the

need to clear its advertisements and promotions with the

University. It also placed the facility on notice that it would no

longer include brochures on approved off-campus housing for

freshmen in the materials mailed out by the University's Central

Housing Office. According to the University, owners of approved

off-campus housing would be required to rely on their own resources

for advertising and publicity.

     Subsequent to this correspondence, the University became

uncooperative in releasing the names and addresses of incoming

students to the Stevenson Arms. As a result, Lieber, the owner,

filed formal requests for the information in accordance with the

Freedom of Information Act. The requests were filed in October and

November of 1992. The University granted Lieber's request with

respect to freshmen enrolled in the fall of 1992. In addition,

according to answers to interrogatories given on behalf of SIU by

its vice president of student affairs, the University provided the

manager of the Stevenson Arms with lists of freshmen who had been

accepted for the following academic year.

     In January of 1993, SIU officially discontinued the practice

of providing the names and addresses of accepted students to owners

of approved off-campus housing, citing "the need to develop a

consistent approach on providing information for all owners and

assure compliance with the law and University policy on release of

student information." Instead of releasing information about the

prospective students to the private owners, SIU advised that it

would send information supplied by the private owners to the

incoming students, and to any others who requested information

about freshman housing, along with information about the on-campus

housing opportunities provided by the University itself.

     Following the change in policy, Leiber was given at least one

additional list of freshmen admitted for the 1993-94 academic year.

After the University's vice president of student affairs discovered

this, he directed that the new policy be implemented and that

address labels not be given to any landlords of approved off-campus

housing for freshmen. Employees of the Stevenson Arms subsequently

provided the University with materials on their facility, but the

University returned a substantial amount of the materials without

including them in its mailings, contrary to the representations it

had made.

     Leiber responded by filing another Freedom of Information Act

request to obtain address list information for individuals who had

inquired about freshman housing for the coming academic year,

including inquiries from accepted freshmen, so he could do the

mailings himself, as he had before. By letter dated April 15, 1993,

the president of SIU denied Lieber's request, claiming (1) that the

Freedom of Information Act does not require release of information

to be used for furthering a commercial enterprise and (2) that

address list information for accepted freshmen is exempt from

disclosure because the release of student information is restricted

by federal law. Although the letter did not cite the pertinent

statutory provision, the president's reference to federal law was

clearly meant to invoke section 7(1)(a) of the Act (5 ILCS

140/7(1)(a) (West 1994)), which exempts from inspection and copying

"[i]nformation specifically prohibited from disclosure by federal

or State law."

     Lieber sought judicial review of the president's decision by

filing suit for injunctive relief in the circuit court of Jackson

County pursuant to section 11 of the Act (5 ILCS 140/11 (West

1994)). In the circuit court, SIU abandoned its claim that federal

law barred disclosure of the names and addresses of admitted

freshmen who had inquired about housing. Instead, it challenged

Leiber's lawsuit on the grounds that such information is exempt

from disclosure under a separate provision, section 7(1)(b) (5 ILCS

140/7(1)(b) (West 1994)), because it constitutes personal

information maintained with respect to students or other

individuals receiving educational services from a public body. SIU

also contended that Lieber is not entitled to relief under the

statute because he is seeking the information for commercial

purposes, namely, to obtain tenants for his building, and section

1 of the law specifically states that it is not intended to be used

"for the purpose of furthering a commercial enterprise." 5 ILCS

140/1 (West 1994).

     Following various proceedings not relevant here, the circuit

court granted summary judgment in favor of SIU. It did not address

the applicability of section 7(1)(b) (5 ILCS 140/7(1)(b) (West

1994)), but agreed with SIU's contention that Leiber is not

entitled to relief under the Act because he is seeking the

requested information for purely commercial purposes.

     As noted at the outset of this opinion, the appellate court

reversed and remanded with directions that summary judgment be

entered in favor of Lieber. 279 Ill. App. 3d 553. The court held

that Lieber's purpose in requesting the information did not

automatically defeat his claim and that the trial court erred in

requiring Lieber to explain his purpose in requesting the

information and in denying his request on the basis that the

information would further his commercial enterprise. The appellate

court further held that the University had failed to meet its

burden of showing that the information requested by Lieber was

exempt under section 7 of the Act.

     This court granted the University's petition for leave to

appeal (155 Ill. 2d R. 315), and the matter is now before us for

review. In conducting our analysis, we are guided by the principle

that under the Freedom of Information Act, public records are

presumed to be open and accessible. The Act does create exceptions

to disclosure, but those exceptions are to be read narrowly. Bowie

v. Evanston Community Consolidated School District No. 65, 128 Ill.

2d 373, 378 (1989).

     When a public body receives a proper request for information,

it must comply with that request unless one of the narrow statutory

exemptions applies. American Federation of State, County &

Municipal Employees v. County of Cook, 136 Ill. 2d 334, 341 (1990).

The exemptions are set forth in section 7 of the Act (5 ILCS 140/7

(West 1994)). If the public body seeks to invoke one of the

exemptions in section 7 as grounds for refusing disclosure, it is

required to give written notice specifying the particular exemption

claimed to authorize the denial. 5 ILCS 140/9(b) (West 1994);

American Federation of State, County & Municipal Employees, 136

Ill. 2d at 341. If the requesting party subsequently challenges the

denial in circuit court (5 ILCS 140/11 (West 1994)), the public

body has the burden of proving that the records in question fall

within the exemption it has claimed. See Carbondale Convention

Center, Inc. v. City of Carbondale, 245 Ill. App. 3d 474, 476-77

(1993).

     Most of the exemptions set forth in section 7 of the Act (5

ILCS 140/7 (West 1994)) are specific, identifying the particular

public records that are not subject to disclosure. Where the public

body claims that a requested document falls within one of these

specifically enumerated categories and is able to prove that claim,

no further inquiry by the court is necessary. The documents "shall

be exempt from inspection and copying." 5 ILCS 140/7(1) (West

1994). This per se rule applies to the specific exemptions set

forth in the subsections of section 7(1)(b) of the Act (5 ILCS

140/7(1)(b) (West 1994)), which pertains to "[i]nformation that, if

disclosed, would constitute a clearly unwarranted invasion of

personal privacy," just as it does to the other exemptions in

section 7. See Healey v. Teachers Retirement System, 200 Ill. App.

3d 240, 243 (1990).

     The appellate court here took a different view, holding that

even if information falls within a specific exemption, the court

must still make an independent determination as to whether

disclosure would amount to "a clearly unwarranted invasion of

personal privacy," taking into account (1) the plaintiff's interest

in disclosure, (2) the public interest in disclosure, (3) the

degree of invasion of personal privacy, and (4) the availability of

alternative means of obtaining the requested information. 279 Ill.

App. 3d at 561. Although this approach is not unprecedented (see,

e.g., Margolis v. Director of the Department of Revenue, 180 Ill.

App. 3d 1084, 1089 (1989); City of Monmouth v. Galesburg Printing

& Publishing Co., 144 Ill. App. 3d 224, 226 (1986)), we agree with

the court in Healey v. Teachers Retirement System, 200 Ill. App. 3d

at 244-45, that it cannot be squared with the clear and unambiguous

language of the statute.

     This is not to say that consideration of the various factors

identified by the appellate court is never appropriate in

determining whether information is exempt under section 7(1)(b) of

the Act. That section does not purport to be an exclusive list of

information that, if disclosed, would constitute a clearly

unwarranted invasion of personal privacy. To the contrary, the

section expressly provides that it is not limited to the items

enumerated. Where a public body asserts an exemption for

information that is not specifically included on the list and

therefore not exempt per se, the court must evaluate the particular

information on a case-by-case basis.

     In the matter before us, the University claimed that the

information requested by Lieber in this case did fall within one of

section 7(1)(b)'s specific exemptions. The appellate court was

therefore wrong to make an individualized assessment of whether

disclosure of the information would invade anyone's personal

privacy. If the information consisted of personal information

maintained with respect to students or other individuals receiving

educational services and was therefore covered by the express terms

of section 7(1)(b)(i), it would, by definition, constitute

"[i]nformation that, if disclosed, would constitute a clearly

unwarranted invasion of personal privacy" (5 ILCS 140/7(1)(b) (West

1994)) and be automatically exempt from disclosure.

     Despite the appellate court's analytical error, we agree with

its conclusion that section 7(1)(b)(i) does not apply to the

information requested by Lieber here. As previously indicated, that

section applies to personal information maintained with respect to

students or other individuals receiving educational services from

a public body. Lieber, however, was not seeking such information.

     Lieber's request was limited to information about housing

inquiries from or on behalf of people who had been accepted as

freshman, but who had not yet enrolled. The University has not

cited, and we have not found, any precedent for construing the term

"student" to include such individuals. In normal discourse, a

person is usually not regarded as being a student at a school

unless and until he has attended class there. See, e.g., Webster's

Third New International Dictionary 2268 (1986) (student, 1a: "one

enrolled in a class or course in a school, college, or

university"). Other laws governing access to school records have

incorporated this conventional interpretation. For example, section

2(a) of the Illinois School Student Records Act (105 ILCS 10/2(a)

(West 1994)) defines "student" as "any person enrolled or

previously enrolled in a school." Similarly, the Federal Family

Educational Rights and Privacy Act states that the term "student"

"does not include a person who has not been in attendance" at an

educational agency or institution. 20 U.S.C. §1232g(a)(6) (1994).

     Although section 7(1)(b)(i)'s exemption applies to "other

individuals receiving *** educational *** services," as well as to

"students" (5 ILCS 140/7(1)(b)(i) (West 1994)), it still does not

fit Lieber's request. Assuming, for the sake of argument, that

freshmen student housing constitutes an "educational service"

within the meaning of the law, the University cannot escape the

fact that none of the subjects of Lieber's request had actually

availed themselves of those services, directly or indirectly. By

definition, they could not have. Only freshmen can live in freshmen

housing. Lieber's request, however, pertained exclusively to

inquiries by or on behalf of people who would not be freshmen until

the following academic year, people who might decide against

attending SIU and never enroll as freshmen there, and who, if they

did enroll, might opt to live in approved off-campus housing and

never utilize the University's housing services at all. To adopt

the University's position under these circumstances would require

us to hold, in effect, that asking about a service is the same as

receiving it. In law, as in life, that is not the case.

     There is another, equally fundamental, impediment to the

University's reliance on section 7(1)(b)(i). The University claims

that the names and addresses of accepted freshmen constitute

"personal information" within the meaning of the statute. Although

names and addresses are unquestionably personal in the sense that

they are specific to particular persons, the statutory reference to

"personal information" means more than simply that. This is

apparent when one considers the provision as a whole. For example,

sections 7(1)(b)(ii) and 7(1)(b)(iii), which follow the provision

at issue here, employ the same term. They exempt from disclosure

"personal information" about elected officials and licensed

professionals. If the University's construction were correct and

"personal information" embraced even basic identification, the

public would have no right to learn the names of officials they had

placed in office, and, under this statute, a person could not

confirm that the doctor who was about to perform surgery on him was

actually licensed to practice medicine. We do not believe the

General Assembly intended such absurd results.

     Where the legislature intended to exempt a person's identity

from disclosure, it did so explicitly. For example, the exemption

in section 7(1)(b)(v) refers to "information revealing the

identity" of certain persons providing information to

administrative, investigative, law enforcement or penal agencies;

section 7(1)(c)(iv) speaks of the "identity of a confidential

source"; and section 7(1)(u) exempts from disclosure information

regarding a university's adjudication of grievance or disciplinary

cases to the extent that disclosure would "reveal the identity" of

the person involved. 5 ILCS 140/7(1)(b)(v), 7(1)(c)(iv), 7(1)(u)

(West 1994). Accordingly, taken in context and considering the

statute as a whole, the phrase "personal information" must have

been intended by the legislature to be understood not in the sense

of basic identification, but in the sense of information that is

"confidential" or "private." The very purpose of section 7(1)(b),

after all, is to protect "personal privacy."

     Even if one disagrees with this proposition, the University's

claimed exemption must fail. Although the University has

strenuously invoked the notion that the names and addresses of

accepted students are private and must be protected from

disclosure, materials submitted to the trial court indicate that

the University routinely makes available to other groups, including

the local newspaper and religious organizations, lists containing

the names and addresses of individuals who have been accepted by

the University but who have not yet enrolled. In addressing similar

situations under the federal Freedom of Information Act, the

federal courts have held that voluntary disclosure in one situation

can preclude later claims that records are exempt from release to

someone else. Cooper v. United States Department of the Navy, 594

F.2d 484, 485-86 (5th Cir. 1979). As the Eighth Circuit Court of

Appeals explained, selective disclosure by the government

          "is offensive to the purposes underlying the FOIA and

          intolerable as a matter of policy. Preferential treatment

          of persons or interest groups fosters precisely the

          distrust of government the FOIA was intended to obviate."

          State of North Dakota ex rel. Olson v. Andrus, 581 F.2d

          177, 182 (8th Cir. 1978).

     We agree with these principles and believe they should be

applied here to bar the University from asserting an exemption

under section 7(1)(b)(i) of Illinois' Freedom of Information Act.

If the address lists can be disclosed to campus ministries and the

local newspaper, the University has no valid basis for withholding

them from Sam Lieber.

     The only reason the University has treated Lieber differently

is that he is in direct competition with the University for what is

apparently a dwindling freshmen housing market. And so we arrive at

the other justification given by the University for denying

disclosure and the reason given by the circuit court for granting

summary judgment in the University's favor, namely, that Lieber is

seeking the information for commercial purposes. The University and

the circuit court based their position on section 1 of the FOIA,

which states that it is not intended to be used "for the purpose of

furthering a commercial enterprise." 5 ILCS 140/1 (West 1994). We

note, however, that section 1 is simply a declaration of policy or

preamble. As such, it is not part of the Act itself (Triple A

Services, Inc. v. Rice, 131 Ill. 2d 217, 227 (1989)) and has no

substantive legal force (see Monarch Gas Co. v. Illinois Commerce

Comm'n, 261 Ill. App. 3d 94, 99 (1994)).

     For the foregoing reasons, the information requested by Lieber

was, as a matter of law, not exempt from disclosure. Accordingly,

the appellate court was correct in reversing summary judgment in

favor of the University and remanding with directions that summary

judgment be entered in favor of Lieber. The appellate court's

judgment is therefore affirmed.

 Affirmed.