162 F.3d 503
 In re: ASSOCIATED PRESS, Chicago Tribune Company, Illinois
Press Association, Copley Press, Incorporated,
Petitioners.
UNITED STATES of America, Plaintiff-Appellee,
v.
William D. LADD, Management Services of Illinois,
Incorporated, et al., Defendants-Appellees.
Appeal of: Associated Press, Chicago Tribune Company,
Illinois Press Association, et al.
 Nos. 98-1267, 98-1474.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 23, 1998.
Decided Dec. 7, 1998.
 
 Joseph P. Thorton (argued), Craven & Thorton, Springfield, IL, for Petitioners in No. 98-1267.
 J. Douglas Wilson (argued), Patrick J. Chesley, Office of the United States Attorney, Springfield, IL, for Respondent in No. 98-1267.
 Ronald J. Stone, Stratton & Nardulli, Springfield, IL; J. Steven Beckett, Brett N. Olmstead, Beckett & Webber, Urbana, IL, for Parties-in-Interest in No. 98-1267.
 Patrick J. Chesley, Office of the United States Attorney, Springfield, IL; J. Douglas Wilson (argued), Office of the United States Attorney, Criminal Division, Washington, DC, for Plaintiff-Appellee in No. 98-1474.
 Ronald J. Stone, Stratton & Nardulli, Springfield, IL; Brett N. Olmstead, Beckett & Webber, Urbana, IL, for Defendants-Appellees in No. 98-1474.
 Joseph P. Thornton (argued), Craven & Thornton, Springfield, IL, for Appellants in No. 98-1474.
 Before WOOD, JR., RIPPLE and ROVNER, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 This appeal brings to us three rulings by the district court in the criminal trial of James R. Berger on charges of defrauding the Illinois Department of Public Aid. That trial ended in the acquittal of the defendant.[1] The appellants, various organizations that provided press coverage of the trial (hereinafter "the Press"), seek our review of the following rulings: (1) the district court's denial of the Press' petition to intervene, (2) the district court's denial of the Press' petition for release of records, and (3) the district court's overruling of the Press' objection concerning Governor Edgar's testimony. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand this case for further proceedings consistent with this opinion.[2]
 
 
 2
 * BACKGROUND
 
 
 3
 On August 23, 1996, Management Services of Illinois and four individual defendants were indicted on 25 counts involving bank fraud, money laundering and a scheme to defraud the Illinois Department of Public Aid. On October 24, 1996, the grand jury issued a superseding indictment that added James R. Berger as a defendant to the charges involving the Public Aid scheme. On June 23, 1997, the district court severed Mr. Berger's case from his co-defendants'. The other defendants went on trial during the summer of 1997.
 
 
 4
 Mr. Berger's trial began in November of 1997. Mr. Berger subpoenaed Illinois Governor James Edgar to testify as a defense witness. Governor Edgar's testimony was scheduled to take place on December 31, 1997. However, on December 30, a juror became ill, and the trial session scheduled for December 31 was therefore canceled. Because Governor Edgar was scheduled to leave on a three week trip to India on January 2, 1998, the parties and the district court agreed that his testimony would be taken by video deposition. On December 30, 1997, the Press filed an "Objection to Effort to Conduct Sworn Testimony of Governor Edgar in Camera," and on December 31, it filed a petition to intervene in the criminal case. On December 31, the district court overruled the "Objection" and denied the petition to intervene. The Governor's testimony was videotaped in the courtroom that same day, with only the parties, the district judge, court personnel and the Governor's attorneys in attendance.
 
 
 5
 On January 14, 1998, Mr. Berger played the Governor's videotaped testimony in its entirety for the jury in open court. The district court then released the video and its transcript to the public. On January 29, 1998, after Mr. Berger had been acquitted of all charges, the Press filed motions to reconsider the court's rulings on the petition to intervene and the objection to the Governor's testimony; it also filed a Petition for Release of various documents that were filed under seal in connection with Mr. Berger's trial. On the same day, the district court denied these three motions.
 
 II
 DISCUSSION
 A. The Press' Right to Intervene
 
 6
 The district court denied the Press' motion to intervene. In this circuit, when a party has been unsuccessful in its motion to intervene, it may appeal only the order denying intervention. Because the motion to intervene was denied, the movant never became a party and thus has no standing to appeal any order other than the denial of intervention. See, e.g., Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 n. 14 (7th Cir.1993) (citing United States v. City of Chicago, 870 F.2d 1256, 1258 (7th Cir.1989)); B.H. v. Murphy, 984 F.2d 196, 199-200 (7th Cir.), cert. denied, 508 U.S. 960, 113 S.Ct. 2930, 124 L.Ed.2d 680 (1993).[3]
 
 
 7
 As a starting point, we recall the fundamental proposition that the "public's right of access to court proceedings and documents is well-established." Grove Fresh Distribs., Inc. v. Everfresh Juice Co., 24 F.3d 893, 897 (7th Cir.1994); see also Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); Nixon v. Warner Communications, Inc., 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). In Grove Fresh, we noted that this fundamental premise is grounded in three important policy concerns. "Public scrutiny over the court system serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding." Grove Fresh, 24 F.3d at 897 (citing Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980)). Born of the common law, this right also has constitutional underpinnings. See id. Indeed, the First Amendment provides a presumption that there is a right of access to "proceedings and documents which have 'historically been open to the public' and where the disclosure of which would serve a significant role in the functioning of the process in question." Id. (quoting United States v. Corbitt, 879 F.2d 224, 228 (7th Cir.1989)). As we also pointed out in Grove Fresh, this presumption of access is rebuttable when it is demonstrated that suppression is necessary to preserve "higher values" and when the suppression is "narrowly tailored" to serve those interests. Id. (quoting Press-Enterprise, 464 U.S. at 510, 104 S.Ct. 819) (internal quotation marks omitted). Overcoming the presumption, however, is a formidable task. The court must be "firmly convinced that disclosure is inappropriate before arriving at a decision limiting access." Id.
 
 
 8
 Our cases, and, indeed, the controlling jurisprudence of the Supreme Court of the United States, also have emphasized that the values that animate the presumption in favor of access require as a "necessary corollary" that, once access is found to be appropriate, access ought to be "immediate and contemporaneous." Id. (citing Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976)) ("The newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression.").
 
 
 9
 In order to ensure the right of access--of "immediate and contemporary" access--our case law has recognized that those who seek access to such material have a right to be heard in a manner that gives full protection of the asserted right. See id. at 898 (noting that the press has standing to challenge a protective order). Such full protection requires adequate notice of any limitation of public access to judicial proceedings or documents and an adequate opportunity, under the circumstances of the case, to challenge that limitation by stating to the court the reasons why the material should remain subject to public scrutiny. See Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 609 & n. 25, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); see also Gannett Co. v. DePasquale, 443 U.S. 368, 401, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (Powell, J., concurring).[4] According such full protection also requires that the issue be examined in a procedural context that affords the court an opportunity for due deliberation. See Central Nat'l Bank v. United States Dep't of Treasury, 912 F.2d 897, 900 (7th Cir.1990).
 
 
 10
 In this circuit, we have intimated that the most appropriate procedural mechanism by which to accomplish this task is by permitting those who oppose the suppression of the material to intervene for that limited purpose. See United States v. Andreas, 150 F.3d 766, 767 (7th Cir.1998) (per curiam) (noting that the newspapers had intervened in the underlying action in order to assert the right of access to materials filed under seal); United States v. Corbitt, 879 F.2d 224, 226-27 (7th Cir.1989) (explaining that a newspaper publisher moved to intervene in the criminal case to request disclosure of the PSR and testimonial letters on which the district court had relied in sentencing, and that the district court apparently granted the motion to intervene and ultimately granted substantial access to the PSR and the letters); see also United States v. Peters, 754 F.2d 753, 756 (7th Cir.1985) (noting that the access issue is more appropriately reviewed on direct appeal rather than by mandamus).[5] Other circuits have followed the same practice.[6]
 
 
 11
 The Press submits that the district court erred in denying it the opportunity to intervene for the limited purpose of raising constitutional and common law claims of access to court proceedings. We agree. As we have just noted, the Supreme Court has recognized that the constitutional and common law right of access to judicial records and proceedings must be balanced against competing values that may require closure. See Press-Enterprise, 464 U.S. at 510, 104 S.Ct. 819. "To facilitate a trial court's case-by-case determination of closure, 'representatives of the press and general public "must be given an opportunity to be heard on the question of their exclusion" ' " from the proceedings or access to documents. In re Knight Publ'g Co., 743 F.2d 231, 234 (4th Cir.1984) (quoting Globe Newspaper, 457 U.S. at 609 n. 25, 102 S.Ct. 2613 (quoting Gannett Co., 443 U.S. at 401, 99 S.Ct. 2898)). Thus, the Press ought to have been permitted to intervene in order to present arguments against limitations on the constitutional or common law right of access.
 
 
 12
 The government nevertheless submits that, although the district court should have allowed the intervention, the Press has suffered no prejudice from the denial of its petition to intervene because the district court reached the merits of its claim and that therefore reversal is not required. It points out that the district court addressed the Press' First Amendment claim of a right of access to Governor Edgar's testimony and thus effectively allowed the Press to intervene. In the government's view, because the Press had the same opportunity to have its claim considered by the district court as it would have, had it been allowed to intervene, the Press requires no further relief.
 
 
 13
 The government is correct that the district court did evaluate the merits of the Press' claim in its opinion. It also appears that at least two circuits have indicated that a failure to permit intervention can be considered harmless if the position of the petitioner has been fully considered by the court.[7] We need not decide, however, the appropriateness of such a course today. Because, for the reasons we shall describe in the following paragraphs, the Press' right of access was not explored as fully as it should have been and therefore needs additional attention by the district court, it is appropriate that the district court now grant intervention before undertaking additional proceedings on remand. Moreover, because the district court necessarily must confront on remand access issues which already have been briefed before us, considerations of judicial economy counsel that we address these matters and identify specifically the tasks which the district court must now undertake.
 
 B. Press Access to Sealed Documents
 
 14
 Together with its post-trial request that the district court reconsider its motion to intervene for purposes of attending the videotaping of the Governor's testimony, the Press filed a motion to release and make public all sealed documents in the case. This motion requested, in effect, that the district court also permit intervention for the purpose of requesting access to the sealed documents. This request was denied by the district court without comment.
 
 
 15
 The Press submits that the district court erred by improperly sealing various court records and then compounded that error by denying access to those records upon proper request. It points out that the district court allowed the parties to file documents under seal without making any findings explaining the sealing. Indeed, continues the Press, the docket sheet in the underlying criminal action reflects a routine practice of sealing documents without identification of the source or nature of the document, the reasons or interests that justify sealing the document, or verification that sealing is narrowly tailored to those interests. Because the decision to seal court records requires a delicate balancing of the parties' right to a fair trial and the public's right to an open court record, the court ought to have articulated, submits the Press, its reasons for limiting access to the records. The district court neither examined the documents nor articulated the factual basis for keeping the documents sealed.
 
 
 16
 The government acknowledges the general rule that material submitted in the trial of a criminal case ought to be available to the press and to the public. Nevertheless, it counsels that there may be legitimate grounds warranting the continued sealing of documents currently held under seal. However, because the district court did not articulate findings to support the sealing of the documents, the government agrees that we ought to remand this case to the district court with instructions that it articulate a justification for the continued sealing of the documents.
 
 
 17
 We have examined thoroughly the record transmitted by the district court. We are unable to find any unsealed explanation by the district court for its decisions to seal many of the documents submitted by the parties.[8] Our decision in Grove Fresh makes clear that the district court ought to have given its reasons for sealing the documents. In Grove Fresh, we emphasized that district courts should articulate on the record the reason for any order that inhibits the flow of information between the courts and the public. Writing for the court, Judge Bauer noted that "[t]he Supreme Court has stated that when a court finds that the presumption of access has been rebutted by some countervailing interest, that 'interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.' " Grove Fresh, 24 F.3d at 898 (quoting Press-Enterprise, 464 U.S. at 510, 104 S.Ct. 819). "Appellate courts have on several occasions emphasized that upon entering orders which inhibit the flow of information between the courts and the public, district courts should articulate on the record their reasons for doing so." Id. (citing In re Continental Illinois Secs. Litig., 732 F.2d 1302, 1313 n. 17 (7th Cir.1984); United States v. Edwards, 672 F.2d 1289, 1294 (7th Cir.1982); In re State-Record Co., 917 F.2d 124 (4th Cir.1990)).[9]
 
 
 18
 As in Grove Fresh, we believe that in this case the appropriate course at this juncture is that the district court articulate its reasons for denying access to the documents that are under seal. See 24 F.3d at 899. A careful examination by the district court and an explanation adequate to permit thorough appellate review is especially warranted in this case because the defendant in the underlying criminal action has maintained that certain material ought to be kept under seal because it was not made part of the public record. As we pointed out in Grove Fresh, "until admitted into the record, material uncovered during pretrial discovery is ordinarily not within the scope of press access." 24 F.3d at 897.
 
 
 19
 Finally, we point out that the district court's explanation for permitting the sealing of any material that is part of the record ought to provide a description of the documents and the reasons for their sealing in order to permit meaningful appellate review. Although redaction of part of the explanation might be justified in some circumstances,[10] the use of such an awkward device ought to be invoked in only the most unusual of situations. Sealing of the entire explanation would indeed be an extraordinary step for a district court to take, given the heavy burden it would place on the Press and, indeed, on the appellate court in its later evaluation of the appropriateness of such action. See Pepsico, Inc. v. Redmond, 46 F.3d 29, 30-31 (7th Cir.1995) (Easterbrook, J., in chambers).
 
 
 20
 C. Exclusion of the Press from the Video Recording of Governor Edgar's Testimony
 
 
 21
 In addressing the Press' objection to the taking of Governor Edgar's testimony in camera, the district court acknowledged the constitutional right of the press and public to attend criminal trials. It took the view, however, that Governor Edgar did not give trial testimony in camera but instead provided "a videotaped deposition for possible use at trial," as provided by Rule 15(a) of the Federal Rules of Criminal Procedure. The district court found that the "exceptional circumstances" required under Rule 15(a) were present because a juror's illness necessitated canceling the trial session, and the Governor's schedule required him to be out of the Country for the next three weeks and therefore unavailable to testify when trial resumed.
 
 
 22
 The district court then explained its decision to keep the videotape sealed until such time as it would be played for the jury. Acknowledging the strong presumption in favor of the common law and constitutional right of access to judicial records, the district court noted that the presumption can be overcome when, in the court's discretion, denial of access is essential to preserve higher values and is narrowly tailored to serve those interests. Applying these criteria, the district court concluded that the parties' Sixth Amendment right to a fair trial necessitated keeping the video under seal until it would be played to the jury. The district court reasoned that any press reports regarding the Governor's testimony might be heard or read (albeit inadvertently) by the unsequestered jury. Such a situation, the district court maintained, would be unfair to both the defendant and the government, especially if the defendant were to decide not to offer the Governor's testimony as evidence at trial.
 
 
 23
 The district court stated that, when the video is played to the jury, the press and public would be welcome to hear and view the video along with the jury. Afterwards, the press and public could order transcripts and copies of the video. This procedure, held the court, would ensure both the defendant's right to a fair trial and the press and public's common law and constitutional right of access and was narrowly tailored to serve those interests.
 
 1.
 
 24
 We first must determine whether this issue has become moot. The Press acknowledges that, because it had access to the Governor's testimony when the videotape was played to the jury and to the transcripts of that testimony shortly thereafter, there is no further need for relief at this point. Nevertheless, it submits, we ought to address the issue because it is an important one that will recur again and evade review.
 
 
 25
 Although the jurisdiction of this court to address issues upon which no further relief can be granted is strictly limited by the case and controversy requirement of the Constitution's Third Article, the Supreme Court has acknowledged that this strict limitation is tempered by an exception for cases that are "capable of repetition, yet evading review." Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam) (quoting Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam)) (internal quotation marks omitted). Before we can invoke this exception, we must determine that the challenged situation is likely to recur again. That determination must be a pragmatic one and not simply an "ingenious academic exercise in the conceivable." Preiser v. Newkirk, 422 U.S. 395, 403, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (quoting United States v. SCRAP, 412 U.S. 669, 688-89, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)) (internal quotation marks omitted). There must also be a "reasonable expectation that the same complaining party would be subjected to the same action again." Bradford, 423 U.S. at 149, 96 S.Ct. 347.[11]
 
 
 26
 We think that these criteria have been met here. As the Supreme Court has noted, criminal trials are usually of such short duration that a denial of access like the one in this case will evade review during the period in which access could be granted. See Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 603, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982).[12] It can reasonably be anticipated that the organizations that sought access to the taping of the Governor's testimony will once again face this situation and that the short duration of the trial will prevent review of their claim. Accordingly, this issue is not moot.
 
 2.
 
 27
 The Press claims that the district court improperly allowed Governor Edgar to testify in private. It points out that, although the district court characterized the taking of the Governor's testimony as a Rule 15 deposition taken by stipulation of the parties, the record reveals no written stipulation to that effect, and none was made in open court. The Press further notes that the district court ordered that the Rule 15 deposition be conducted without public or press access to the courtroom on the ground that there was a danger that the jury might learn the substance of the Governor's testimony before the time the video was played to the jury. The district court articulated, however, no factual basis for its fear that the jury would ignore the court's daily admonitions to avoid any media coverage of the trial. Absent specific evidence that the jury had disregarded or would disregard the district court's admonitions, the Press contends that the court had no reason to allow the Governor to testify in private. In sum, submits the Press, the Governor's testimony was actually trial testimony that was merely disguised as a Rule 15 deposition. As such, the district court should have conducted the traditional analysis under Press-Enterprise before closing the courthouse to the public and press.
 
 
 28
 The government submits that the district court properly excluded the public and press from Governor Edgar's deposition. It urges us to accept the district court's characterization of the procedure employed as a Rule 15 deposition. By definition, it continues, Rule 15 depositions are taken from "prospective" witnesses. When the deposition is taken, the party seeking the deposition is not committed to introducing it at trial, and the trial judge has not ruled on the admissibility of the testimony. Until admitted into the record, potential evidence is not ordinarily within the scope of press access. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). Arguing in the alternative, the government submits that, even if there is a common law or constitutional right of access to a Rule 15 deposition, the district court did not abuse its discretion by sealing the deposition until it was played at trial. Under Grove Fresh, the press' right of access can be overcome if necessary to protect the parties' right to a fair trial. Mr. Berger's trial was highly publicized, and there was a substantial possibility that news coverage of the Governor's deposition would have come to the jurors' attention and thereby damaged Mr. Berger's right to a fair trial.
 
 
 29
 Our resolution of this issue depends on the validity of the Press' characterization of the videotaping as trial testimony as opposed to a Rule 15 deposition. As we have previously noted, it is well established that discovered but not-yet-admitted evidence is not ordinarily within the scope of press access. See Grove Fresh, 24 F.3d at 897-98.[13] In our view, the taping of the Governor's testimony was permissible pursuant to Rule 15(g) of the Federal Rules of Criminal Procedure. That subsection permits the taking of a potential witness' testimony by deposition upon the agreement of the parties. The language of the subsection makes clear that, when such consent is present, the deposition may be taken without regard to the other strictures of the rule.[14] Under these circumstances, it appears that the district court acted well within its discretion in permitting the testimony of the Governor to be taken by videotape.
 
 
 30
 There is, however, one matter that needs further attention before this matter can be put to rest. Although the district court set forth its reasons for permitting the testimony to be taken by videotape, it placed under seal the discussion in chambers in which the parties reached agreement on the taking of this testimony by videotape. The Press therefore has not had access to this agreement. On remand, the district court must either unseal the proceedings leading to the agreement or explain in writing its reason for believing that this stipulation must remain under seal.
 
 Conclusion
 
 31
 The district court erred in denying the Press the right to intervene for the limited purpose of seeking disclosure of material sealed by the court and access to the proceedings of the court. Although the Press has no right of access to discovery materials not yet admitted into the record, the district court must provide an explanation for its decision to seal material in its possession, and that explanation must be crafted in such a manner as to make meaningful appellate review possible. Finally, the testimony of Governor Edgar was taken by stipulation of the parties as permitted by Rule 15(g) of the Federal Rules of Criminal Procedure. However, the stipulation of the parties and the agreement of the court must be made a matter of public record, or the reasons for keeping this material sealed must be stated by the district court.
 
 
 32
 Accordingly, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.[15] Each party shall bear its own costs on this appeal.
 
 
 33
 REVERSED AND R EMANDED.
 
 
 
 [1]
 See United States v. Berger, No. 96-30036 (C.D.Ill.)
 
 
 [2]
 By order of this court, this appeal has been consolidated with appellants' Petition for a Writ of Mandamus (Case No. 98-1267), which seeks review of the same three rulings
 
 
 [3]
 Other circuits have acknowledged exceptions to the general rule that only parties may appeal a trial court's judgment. Those cases generally involved situations in which the outcome of the district court proceedings affected the appellant's interests in some respect. See, e.g., United States v. Chagra, 701 F.2d 354, 359-60 (5th Cir.1983) (listing various circumstances in which non-parties with a stake in the proceedings have been allowed to appeal, and holding that non-party media organizations may appeal closure orders); West v. Radio-Keith-Orpheum Corp., 70 F.2d 621, 623-24 (2d Cir.1934) (noting that, although non-parties generally may not appeal, they may be allowed to appeal if a court's decree affects their interests). As we note later in the text, the circumstances here do not require that we determine whether any such exception ought to be acknowledged in this circuit
 
 
 [4]
 Justice Powell wrote:
 It is not enough, however, that trial courts apply a certain standard to requests for closure. If the constitutional right of the press and public to access is to have substance, representatives of these groups must be given an opportunity to be heard on the question of their exclusion.... Upon timely objection to the granting of the motion [for closure], it is incumbent upon the trial court to afford those present a reasonable opportunity to be heard on the question whether the defendant is likely to be deprived of a fair trial if the press and public are permitted to remain in attendance. At this hearing, it is the defendant's responsibility as the moving party to make some showing that the fairness of his trial likely will be prejudiced by public access to the proceedings. Similarly, if the State joins in the closure request, it should be given the opportunity to show that public access would interfere with its interests in fair proceedings or preserving the confidentiality of sensitive information. On the other hand, members of the press and public who object to closure have the responsibility of showing to the court's satisfaction that alternative procedures are available that would eliminate the dangers shown by the defendant and the State.
 Gannett Co., 443 U.S. at 400-01, 99 S.Ct. 2898 (Powell, J., concurring).
 
 
 [5]
 A closure order is appealable under the collateral order doctrine. See United States v. Andreas, 150 F.3d 766, 768 (7th Cir.1998)(per curiam); In re Continental Illinois Secs. Litig., 732 F.2d 1302, 1307-08 (7th Cir.1984); United States v. Dorfman, 690 F.2d 1230, 1232 (7th Cir.1982)
 Several of our cases, although not employing the term "intervention," clearly sanctioned and indeed expressed a preference for proceeding by way of appeal rather than mandamus. In In re Continental Illinois Securities Litigation, 732 F.2d at 1306-07, two reporters informally requested access to a document filed in the litigation and then, upon the district court's instructions, made "formal motions" to that effect. The district court ultimately granted access to the requested materials. In United States v. Edwards, 672 F.2d 1289, 1291 (7th Cir.1982), a television station and a radio station "informally" requested release of an audio tape that had been played in the criminal trial. The broadcasters sought to copy the tape for broadcast to the public. The court suggested that the broadcasters file "formal" applications requesting the release of the tape. The broadcasters then submitted written applications seeking permission to copy all video and audio tapes that had been or might be admitted into evidence. The court heard oral argument by counsel for the broadcasters, and by counsel for each of the defendants and counsel for the United States. The court then denied the applications in an oral decision from the bench. On appeal, this court held that the issue was not moot and that the district court had not abused its discretion. Similarly, in United States v. Dorfman, 690 F.2d 1230, 1231 (7th Cir.1982), the court referred to "a motion by newspaper publishers and broadcasters to unseal the sealed exhibits, so that they could be inspected and copied" without addressing how the press procedurally came before the court. The issues on appeal dealt with the court's appellate jurisdiction under the collateral order doctrine and whether the district court had authority to unseal the exhibits.
 
 
 [6]
 In United States v. Three Juveniles, 61 F.3d 86 (1st Cir.1995), cert. denied, 517 U.S. 1166, 116 S.Ct. 1564, 134 L.Ed.2d 664 (1996), the First Circuit reviewed a district court's decision to close the proceedings in which three juveniles were charged with civil rights violations. The district court had allowed a newspaper to intervene for the purpose of seeking access to the proceedings and to any documents filed in conjunction with the proceedings. Although the court allowed the intervention and granted access to certain redacted documents, the court denied access to the arraignments. On appeal, the issue of intervention was not addressed
 In United States v. Preate, 91 F.3d 10 (3d Cir.1996), a newspaper appealed the district court's denial of its motion to intervene and its motion to continue the sentencing of a criminal defendant pending resolution of the newspaper's motion to unseal certain documents associated with the criminal trial. On the issue of intervention, the Third Circuit noted that, notwithstanding the district court's denial of leave to intervene, the newspaper "was effectively permitted to intervene so as to assert its claims. It is clear that such intervention was appropriate." Id. at 12 n. 1.
 A Fifth Circuit case, United States v. Chagra, 701 F.2d 354 (5th Cir.1983), summarizes the various approaches taken by different circuits and states regarding the process by which the media may challenge closure orders. Some allow review by direct appeal without intervention, others require intervention, and still others hold that, since non-parties generally may not appeal, closure orders are reviewable only by writs of mandamus or prohibition. See id. at 359-60.
 The Ninth Circuit, although not disagreeing on the right of the press to seek a timely ruling on the issue of access, has held that review of that ruling is appropriate through mandamus. See Oregonian Publ'g Co. v. United States Dist. Court, 920 F.2d 1462, 1465 (9th Cir.1990), cert. denied, 501 U.S. 1210, 111 S.Ct. 2809, 115 L.Ed.2d 982 (1991); Seattle Times Co. v. United States Dist. Court, 845 F.2d 1513, 1515 (9th Cir.1988); Times Mirror Co. v. United States Dist. Court, 685 F.2d 1162, 1165-66 (9th Cir.1982); Sacramento Bee v. United States Dist. Court, 656 F.2d 477, 480 (9th Cir.1981), cert. denied, 456 U.S. 983, 102 S.Ct. 2257, 72 L.Ed.2d 861 (1982).
 
 
 [7]
 See In re Grand Jury Proceedings in the Matter of Freeman, 708 F.2d 1571, 1575 (11th Cir.1983) (holding that the district court's denial of a petition to intervene was harmless error because the merits of the appellant's claim were eventually considered on appeal); see also Preate, 91 F.3d at 12 n. 1 (noting that, despite the district court's denial of the motion to intervene, the press was "effectively" permitted to intervene to present its claims)
 
 
 [8]
 The docket sheet does note one instance in which the district court indicated that material would be sealed due to the publicity surrounding the trial. So far as we have been able to tell, however, the district court did not elaborate on why the publicity necessitated sealing. The generality of this statement makes it an inadequate justification for the sealing of the documents to which it pertains and certainly for all the other documents that were sealed. Specifically, next to item 378, the docket sheet reads:
 ORDER by Judge Richard Mills. Due to the substantial pretrial and trial publicity which this case has engendered, defendant's motion to require the government to specifiy [sic] persons it regards as co-conspirators for purposes of admitting statements per Federal Rule of Evidence 801(d)(2)(E), his memorandum of law in support thereof, and the government's reply to said motion are to be placed and are to remain under seal under [sic] further order of the court.
 
 
 [9]
 See also, e.g., Washington Post v. Robinson, 935 F.2d 282, 289 (D.C.Cir.1991) (holding that a "trial court must articulate specific findings on the record demonstrating that the decision to seal the plea agreement is narrowly tailored and essential to preserve a compelling government interest"); Oregonian Publ'g Co. v. United States Dist. Court, 920 F.2d 1462, 1466 (9th Cir.1990) ("An order of closure should include a discussion of the interests at stake, the applicable constitutional principles and the reasons for rejecting alternatives, if any, to closure."); In re Charlotte Observer, 882 F.2d 850, 853 (4th Cir.1989) ("[W]e have required district courts considering closure of proceedings to ... support any decision to close with reasons and findings of record, including why no less drastic alternatives to closure are feasible. We have required such specific reasons and findings on the record to facilitate the de novo review of such closure orders that is mandated by their constitutional implications." (citations omitted)); United States v. Haller, 837 F.2d 84, 87 (2d Cir.1988) (holding that the district court erred in failing to make specific, on-the-record findings in support of its order to seal a plea agreement); In re Herald Co., 734 F.2d 93, 100 (2d Cir.1984) ("The trial judge must articulate the basis for any closure order, supplying sufficient basis for appellate review."); United States v. Criden, 675 F.2d 550, 554 (3d Cir.1982) ("[A] district court, before closing a pretrial hearing, must consider alternatives to closure and state on the record its reasons for rejecting them.")
 
 
 [10]
 Cf. Methodist Hosps., Inc. v. Sullivan, 91 F.3d 1026, 1032 (7th Cir.1996) (noting that redaction allows keeping certain information confidential while affording access to information in which the public is legitimately interested)
 
 
 [11]
 See also Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 6, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986); Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 603, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); Lane v. Williams, 455 U.S. 624, 634, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982); Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982); Gannett Co. v. DePasquale, 443 U.S. 368, 377-78, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979); Nebraska Press Ass'n. v. Stuart, 427 U.S. 539, 546-47, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); Board of Educ. of Downers Grove Grade School Dist. No. 58 v. Steven L., 89 F.3d 464, 467 (7th Cir.1996) ("To fall within this exception, the alleged injury must be of inherently limited duration and likely to happen again to the same complaining party."), cert. denied, --- U.S. ----, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997)
 
 
 [12]
 See also United States v. Peters, 754 F.2d 753, 757-58 (7th Cir.1985) (holding that the issue of the media's exclusion from voir dire and from access to documents is not moot, given the reasonable expectation that the appellants would face closure orders again); United States v. Edwards, 672 F.2d 1289, 1291-92 (7th Cir.1982) (finding that broadcasters' challenge to the denial of access to tape recordings during trial was not moot, given the likelihood that similar future requests for contemporaneous access to tapes during trials would be denied)
 
 
 [13]
 We further note that, in their post-trial renewal of the motion to intervene, the Press suggested that admission of certain members of the Governor's staff, including his Press Secretary, to closed areas of the court while the Governor was giving his testimony transformed the proceeding into a "pre-trial proceeding, or an adjunct to a trial proceeding, presumptively opened to the public." Our independent review of the Governor's testimony makes it clear that this suggestion is without factual foundation. Notably, the district court's release of this information would have avoided this suggestion
 
 
 [14]
 Subsection (g) provides: "Nothing in this rule shall preclude the taking of a deposition, orally or upon written questions, or the use of a deposition, by agreement of the parties with the consent of the court." Fed.R.Crim.P. 15(g)
 We need not concern ourselves therefore with whether the Governor was "unavailable" as that term is employed in subsection (e) of the Rule. See Fed.R.Crim.P. 15(e); Fed.R.Evid. 804(a).
 
 
 [15]
 Because we have addressed the Press' contentions in this appeal, we deny the Press' petition for a writ of mandamus (No. 98-1267)