In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2301

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WILLIAM D. LADD, RONALD D. LOWDER
and JAMES R. BERGER,

Defendants-Appellees.


APPEAL OF:  ASSOCIATED PRESS, CHICAGO
TRIBUNE COMPANY, COPLEY PRESS,
INCORPORATED, et al.


Appeal from the United States District Court
for the Central District of Illinois.
No. 96 CR 30036--Richard Mills, Judge.


ARGUED DECEMBER 7, 1999--DECIDED JUNE 27, 2000



  Before EASTERBROOK, RIPPLE and DIANE P.
WOOD, Circuit Judges.

  RIPPLE, Circuit Judge.  This case comes
to us as a successive appeal to our
earlier decision, In re Associated Press,
162 F.3d 503 (7th Cir. 1998). In that
decision, we held that media
organizations covering the criminal trial
of James Berger could intervene in the
criminal proceedings for the limited
purpose of seeking documents sealed by
the district court. On remand, the
district court unsealed numerous
documents, but required that the identity
of unindicted coconspirators be kept
under seal. Statements of these
individuals had been admitted at Berger's
trial pursuant to the hearsay exception
for unindicted coconspirators. In this
appeal, we must decide whether the
identity of those unindicted
coconspirators should be released to the
public. For the reasons set forth in the

following opinion, we reverse the judgment of the district court and remand the case for further proceedings.

## I
## BACKGROUND

On August 23, 1996, Management Services of Illinois and four individual defendants were indicted on 25 counts involving bank fraud, money laundering, and a scheme to defraud the Illinois Department of Public Aid. On October 24, 1996, the grand jury issued a superseding indictment that added James R. Berger as a defendant to the charges relating to the Public Aid scheme. On June 23, 1997, the district court severed Berger's case. The other defendants went to trial during the summer of 1997. Berger's trial began in November 1997.

At Berger's trial, the Government sought to introduce the statements of alleged coconspirators pursuant to Federal Rule of Evidence 801(d)(2)(E), the hearsay exception for coconspirator statements./1 The district court admitted conditionally the statements "subject to the Government's eventual proof of the foundational elements at trial." R.374 at 3.

Various news organizations covering the trial ("the Press") sought access to numerous documents introduced at trial. The district court initially denied the Press' motion to intervene. We reversed and remanded with instructions to allow the Press to intervene. See Associated Press, 162 F.3d at 508-09. The Press then sought access both to sealed documents and to information regarding the videotaped deposition of Illinois Governor James Edgar. See id. at 509-13. In our opinion remanding the case, we wrote:

[W]e believe that in this case the appropriate course at this juncture is that the district court articulate its reasons for denying access to the documents that are under seal. A careful examination by the district court and an explanation adequate to permit thorough appellate review is especially warranted in this case because the defendant in the underlying criminal action has maintained that certain material ought to be kept under seal because it was not made part

of the public record.

Id. at 510 (citation omitted). To allow for meaningful appellate review, we also asked the district court to describe the documents and to provide the reasons why they were sealed. See id.

In the course of the proceedings on remand, the court offered two reasons for initially having sealed the documents. See United States v. Martin, 38 F. Supp.2d 698 (C.D. Ill. 1999). First, it believed that, because of concerns over publicity during the trial, non-disclosure was necessary to protect the defendants' right to a fair trial. Second, the court believed that non-disclosure was required to ensure that the Government's ongoing investigation was not compromised. Because neither of these reasons justified keeping documents under seal after trial, the district court later unsealed almost all of the documents.

The court decided, however, to keep under seal the names of five unindicted coconspirators whose testimony was admitted at trial. Noting that it had made a public explanation of why it had admitted their testimony, the district court took the view that disclosing the names of the unindicted coconspirators would not promote an understanding of or confidence in the criminal justice system. It further said that the only reason for disclosing the identities was to stigmatize the individuals. The district court concluded that the individuals had a high privacy interest because they would be affected adversely by the public's knowledge that they had been named as coconspirators in the indictment, but would have no opportunity to clear their names at trial. In the court's view, the damage to their reputations would be irreparable.

II
DISCUSSION
A.

Central to our decision today--and long embedded in our case law and indeed in that of the Supreme Court--is the strong presumption that all trial proceedings should be subject to scrutiny by the public. As the Supreme Court has written:

[A] trial courtroom also is a public place where the people generally--and representatives of the media-- have a right to be present, and where their presence historically has been thought to enhance the integrity and quality of what takes place.

Richmond Newspapers v. Virginia, 448 U.S. 555, 578 (1980). Again in Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 509 (1984), the Court wrote that the public also presumptively has a right of access to the records of judicial proceedings. See also Smith v. United States District Court Officers, 203 F.3d 440, 441 (7th Cir. 2000) [hereinafter Court Officers]. We emphasized the importance of this presumption in our earlier opinion in this case. See Associated Press, 162 F.3d at 506. This presumption is rebuttable to preserve "higher values" so long as the suppression is narrowly tailored to preserving those values. Id.; see also Press-Enterprise, 464 U.S. at 510; Grove Fresh Distrib., Inc. v. Everfresh Juice Co., 24 F.3d 893, 897 (7th Cir. 1994).

The Press seeks access to documents that identify by name unindicted coconspirators whose hearsay statements were considered as evidence during trial. We have no doubt that there is an important public interest in revealing this information. The source of evidence admitted at trial and the circumstances surrounding its admittance are important components of the judicial proceedings and crucial to an assessment of the fairness and the integrity of the judicial proceedings. See Napue v. Illinois, 360 U.S. 264, 269 (1959); United States v. Kaufmann, 783 F.2d 708, 710 (7th Cir. 1986) (quoting Napue). Therefore, when the hearsay statement of an unindicted coconspirator is entered into evidence, it is a very different situation than one in which the alleged coconspirator is identified by the Government during a preliminary phase of the case. We therefore find ourselves in respectful disagreement with our colleague in the district court who took the view that the situation before us ought to be controlled by the decision of the Court of Appeals for the Third Circuit in United States v. Smith, 776 F.2d 1104 (3d Cir. 1985) [hereinafter Smith].

In Smith, the court refused to allow the release of the names of individuals identified as potential coconspirators on a bill of particulars. It concluded that identification by the Government created the chance of career-ending harm to the individuals on the list, and that those individuals, some of whom might be entirely innocent, would have no opportunity to vindicate themselves. See id. at 1113-14. In that case, the Government had provided no factual context for its inclusion of particular names on the list. See id. at 1113. Judge Mansmann, concurring in the judgment, emphasized that the Government had admitted that it had "used a broad brush" in deciding to include names on the list "for the tactical purpose of not limiting the evidence it could produce at trial." Id. at 1116-17 (Mansmann, J., concurring).

We need not decide definitively the correctness of the holding in Smith. It is sufficient to point out that the situation there was quite different than the one before us. Here the hearsay statements of the coconspirators were admitted into evidence. For coconspirator statements to be admitted pursuant to Rule 801(d)(2)(E), the Government must prove by a preponderance of the evidence that a conspiracy existed, that both the declarant and the defendant were members of the conspiracy, and that the statements were made in the course and in furtherance of the conspiracy. See United States v. Mojica, 185 F.3d 780, 788 (7th Cir.), cert. denied, 120 S. Ct. 515 (1999); United States v. Powers, 75 F.3d 335, 339 (7th Cir. 1996). The district court, in admitting the statements, found that those requirements had been met. The status of coconspirator was, therefore, grounded in an evidentiary basis far more solid than the assertion of the United States Attorney./2

The Third Circuit held in Smith that names of the unindicted coconspirators could be withheld because otherwise it was "virtually certain that serious injury [to reputation] will be inflicted." Smith, 776 F.2d at 1114. Here, however, where there is a more reliable basis for finding that the individuals were indeed coconspirators, that concern must yield to the public's

right to know the sources of evidence considered by the jury at trial pursuant to the coconspirator exception to the hearsay rule.

The Government also notes that it has released to the public an explanation of how the statements of unindicted coconspirators were used at trial. It argues that, on account of this statement, the public may have confidence in the process by which the statements were used and that, consequently, there is no public interest in releasing the actual identity of the unindicted coconspirators. We cannot agree. The source of admitted testimony is essential to determining its reliability, and it has long been recognized that the reliability of a given witness' statements may be determinative of the outcome of a particular case. See Napue, 360 U.S. at 269; Kaufmann, 783 F.2d at 710 (quoting Napue). The identity of a witness whose statement was admitted at trial is a very important factor in assessing the integrity of the proceedings. "To hide from the public eye entire proceedings, or even particular documents or testimony forming a basis for judicial action that may directly and significantly affect public interests, would be contrary to the premises underlying a free, democratic society." City of Hartford v. Chase, 942 F.2d 130, 137 (2d Cir. 1991) (Pratt, J., concurring).

B.

Given the presumption in favor of public access to judicial proceedings and the particular importance of the public's right to assess the sources of evidence and the circumstances under which it is admitted, we must conclude that these considerations outweigh any privacy interest that might be asserted in favor of keeping this information secret.

In the Government's view, by virtue of the district court's ruling on the admissibility of the statements under the coconspirator exception to the hearsay rule, the unindicted coconspirators now bear the stigma of having been so identified not only by the United States Attorneys' office, but also by the district court. Therefore, argues the Government, the privacy interest of the

unindicted coconspirators is greater in this case than in Smith. See Martin, 38 F. Supp. 2d at 704; Appellee's Br. at 15-16. We look at the matter differently. As we have just pointed out, before the district court, the Government was required to demonstrate, by a preponderance of the evidence, that the individuals, although unindicted, were in fact members of the conspiracy. This process identifies coconspirators to a degree of certainty sufficient to permit the consideration of their statements despite the statements' otherwise disabling characteristic as hearsay. This same judicial scrutiny also provides a reasonable degree of certainty that the individuals are in fact coconspirators.

Indeed, we believe that our analysis is compatible with the essential holding of Smith. The animating concern of the Third Circuit's opinion was to avoid tarnishing the reputations of individuals who had been named coconspirators by the Government without any judicial check on the factual basis for the imposition of such a label. See Smith, 776 F.2d at 1114 (stating that its concern was with the potential injury to "innocent individuals")./3 Here, the concern of our colleagues in the Third Circuit is squarely met by the determination of the district court that there was sufficient reason to believe that these individuals were coconspirators to justify the admission of their hearsay statements.Although concern for the reputation of the unindicted coconspirators is not entirely eradicated by the determination of the district court, that concern is overcome by the important countervailing public interest in disclosure of the trial proceedings.

Conclusion

Because the hearsay statements of the unindicted coconspirators were admitted into evidence, the public interest in disclosure outweighs the privacy interests of the coconspirators. Release of the identities of the unindicted coconspirators is not for the gratification of private spite or the promotion of scandal. See Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978). Rather, it is to ensure the integrity and quality of the court's proceedings. See Richmond Newspapers, 448 U.S. at 578. Accordingly, on remand, the

district court must release to the public the names of all unindicted coconspirators whose statements were admitted into evidence pursuant to Rule 801(d)(2)(E) at James Berger's trial.

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded for proceedings in conformity with this opinion.

REVERSED and REMANDED

/1 A statement is not hearsay if--

(2) The statement is offered against a party and is . . . (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Fed. R. Evid. 801(d).

/2 Our case is also qualitatively different from the situation in United States v. Anderson, 799 F.2d 1438 (11th Cir. 1986). There, the Eleventh Circuit refused the request of the Tampa Tribune for access to a list of unindicted coconspirators that was attached to a discovered document. The court held that documents produced in discovery are not accessible to the public.

/3 The Third Circuit's holding has been interpreted this way by other courts. See Times Mirror Co. v. United States, 873 F.2d 1210, 1216 (9th Cir. 1989) (applying the reasoning of Smith to search warrants because "[p]ersons who prove to be innocent are frequently the subjects of government investigations"); United States v. Gonzalez, 927 F. Supp. 768, 776 (D. Del. 1996) (describing the critical issue in Smith as the "danger that disclosing names of unindicted co-conspirators would cause serious injury to innocent third parties").